UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FEDERAL RESERVE BANK OF ST. LOUIS § | |
| § | |
| v.  § | Civ. No. 4:18-cv-01205 |
| § | |
| PLANVIEW DELAWARE, LLC § | |

## PLANVIEW'S ORIGINAL ANSWER AND COUNTERCLAIM

Planview Delaware, LLC ("Planview") files its original answer and counterclaim to Federal Reserve Bank of St. Louis' ("Bank") complaint.

### I.   BACKGROUND

#### A.   Introduction

1. This is a case about one hand of the Bank not knowing what the other hand of that bureaucracy was doing. The Bank's procurement team and its implementation team affirmatively approved each of the components about which it now complains. Apparently, those segments of the Bank had failed to communicate with the potential users of the software within the Bank until the last minute. When they did, the users objected to Planview's product and refused to learn how the product worked or allow Planview to further configure it.

#### B.   Last Minute Complaints

2. The first time the Bank raised its current complaints was at the final review phase—the very end of a process in which the Bank had previously signed off on each element of the software. Even now it identifies only four perceived problems[1] yet refuses to pay in accordance with the Agreement and demands repayment of every penny it spent, despite contractual language to the contrary.

---

[1] Each of these complaints is the Bank's characterization of the functionality of the Planview product itself, which is inaccurate, but in any event was thoroughly addressed throughout the procurement process, contracting, kickoff, solution blueprint (scoping), and configuration/customization.

| Bank Complaint | Reality |
|---|---|
| 1. Time sheets ▮▮▮▮ (Complaint ¶¶11A and B) | a. ▮▮▮▮ is incorporated into ▮▮▮▮.<br><br>b. Running ▮▮▮▮ is against best practices; ▮▮▮▮.<br><br>c. Bank gave deemed acceptance for this process at all stages until the end; Planview presented it from ▮▮▮▮ and again during the ▮▮▮▮.<br><br>d. Nevertheless, if Bank had allowed Planview the right to cure, Planview could have provided this capability. |
| 2. Budgeting and scheduling requires ▮▮▮▮ (Complaint ¶11C) | a. Project Management Institute lists creating baseline as the best practice for managing project costs and variance against budgets.<br><br>b. Bank gave deemed acceptance for this process at all stages until the end; Planview presented it from ▮▮▮▮ and again during the ▮▮▮▮. |
| 3. Bank does not like configuration of ▮▮▮▮ tile (Complaint ¶11D) | a. Bank has not looked at the alternative view because it did not allow Planview a right to cure, nor did it participate in training.<br><br>b. Bank refused Planview's offer to create a custom tile, claiming it would take an additional ▮▮▮▮, but that is inaccurate.<br><br>c. Bank gave deemed acceptance for this process at all stages until the end; Planview presented it from ▮▮▮▮ and again during the ▮▮▮▮. |
| 4. Bank claims ▮▮▮▮ (Complaint ¶11E) | a. Planview's out of the box product contains over ▮▮ reports, which the Bank accepted upon receipt of Planview's ▮▮▮▮ on March 20, 2018.<br><br>b. Those reports can be ▮▮▮▮. Bank may not know that because it never raised the complaint to the Planview implementation team, nor did it allow an opportunity to cure. |
| Bank Complaint | Reality |

Case: 4:18-cv-01205-JCH   Doc. #: 21   Filed: 08/13/18   Page: 2 of 13 PageID #: 314

### C. Statement of Work

3. After an abbreviated bidding process, the Bank chose Planview's more affordable Essentials solution. On March 9, 2018, the Bank executed an SaaS Master Agreement and Statement of Work ("SOW") (collectively "Agreement") that detailed the process for implementation. (Exhibit 1).

4. In section 6 of the SOW, the Bank agreed that "Acceptance" of Planview's "deliverables" occurred when the "Bank has reviewed and/or tested the applicable SOW deliverable(s) for the presence and suitability of the required functionality." *Id.* The Bank had 10 days from delivery to conduct its tests. *Id.* If it found "material errors, problems or faults" during that period, the Bank was required to "promptly notify Planview of such errors, problems or faults" and permit "Planview [to] correct the fault within five (5) days and the acceptance test will be repeated on the corrected portion of the deliverable(s) until Bank accepts or is deemed to accept, the deliverable(s)." *Id.* "A deliverable shall be deemed accepted if Bank (a) does not commence the Acceptance test within the timeframe above, or (b) does not provide Planview with notice of acceptance or rejection within ten (10) days outside of testing." *Id.*

5. "Deliverables" included items from Showcase Solution in Phase I to "Configured SaaS Services" in Phase 5 and then to Solution Review. *Id.* Not only was the Bank "deemed to accept" each of those "deliverables" containing the components about which it now complains, but it paid for most of them. *Id.* Yet instead of honoring the Agreement, at the last minute the Bank raised concerns it had never before expressed, refused to allow Planview its right to cure and now sues for remedies expressly prohibited under the Agreement.

6. Planview's iterative process was laid out in detail in Appendix A to the SOW. *Id.* Planview began by providing the Bank a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ***In other words,***

*every bullet point from Appendix B that the Bank quotes in paragraph 8 of its complaint as lacking was already included in the off-the-shelf version of Planview's product that it received and still has*.

7. Two Planview professionals spent a week at the Bank, and the Bank does not deny that they followed the Agreement step by step.

### D.     Solution Definition

8. Among many other things, the Bank and Planview teams jointly developed a "Solution Definition" (Exhibit 2) that "contained a detailed description of capabilities and analytics to be configured in SaaS Services" but made no reference to the particulars it now claims were promised. "Bank responsibilities and deliverables" for that phase included "review[ing] and approv[ing] the Solution Definition following completion of the walk-through of the Showcase Solution." (Exhibit 1).

9. For instance, both Showcase Solutions and the product as configured for the Bank records ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—daily *recording*. The Bank never asked for ▇▇▇▇▇▇ until the Solution Review phase. Instead, the Bank saw, discussed and accepted the ▇▇▇▇▇▇.

| Title | Description | Status | No. of comments |
|---|---|---|---|
| Time Reporting | **NOTES**<br>- ▇▇▇▇▇▇▇▇▇▇▇▇<br>- ▇▇▇▇▇▇▇▇▇▇▇▇<br><br>**CAPABILITY DEFINITION**:<br>- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. | DECIDED | 0 |

(Exhibit 2).

### E. ProjectPlace

10. Right away in the process, three Planview and four Bank representatives joined ProjectPlace by Planview ("ProjectPlace") where all could see details of the product's functionality and track its configuration and implementation. (Exhibit 3, select screenshots). If the Bank did not accept a particular component, it had the opportunity to suggest "modifications" within the system. Today there are no outstanding requests for modifications. *Id.* Instead, the Bank moved cards within the system to note that components were complete, including ███ ███████████████████████████████████████.







*Id.*



11. Planview walked the Bank through ▮ slides broken down by features, and it never complained about any of the issues it now sues over. That deck is also available on ProjectPlace. (Exhibit 4). In fact, during the first week of the process, called Solution Blueprint, the Bank approved Schedule Start and Finish becoming Actual Start and Finish on a weekly basis.

*Id.*

12.     The Bank ███████████████████████ as represented below, not only at the Solution Blueprint phase but also during the Configuration Cycles.



While ██████████████████████████, it is not recommended and violates best practices.

### F. Bank's Acceptance Through Configuration Cycle

13.     The Bank's acceptance of the Configuration Cycle belies its current position.  Planview conducted ████████████████████████████████████████████████████████████████████████████ (Exhibit 1).  The Bank participated, but said nothing about its current complaints even though it was contractually required to "provide immediate feedback on changes required."  *Id.*  In fact, it accepted the Configuration Cycle.  And just 3 business days before the final Solution Review, the Bank sent an email listing concerns, which were easily addressed, but did not include its current complaints.  (Exhibit 5).

### G. Bank's Breaches

14.     Suddenly, the Bank changed its mind.  At Solution Review, a full run of the product, the Bank's team refused acceptance, even though it had previously accepted each of the components at issue, and even though it had never raised the concerns before.  It then refused any meaningful dialog, much less coding, despite Planview's right to and offer to cure.

15. The Bank, not Planview, materially breached the Agreement by consistently violating "Bank responsibilities and deliverables," by refusing to pay amounts it is responsible for under the Agreement and by denying Planview a right to cure.

## II. PLANVIEW'S ANSWER

### A. Specific Responses

16. Planview admits the statement contained in paragraph 5 of the complaint other than the use of the term ▮▮▮▮▮ globally. The Agreement's sole reference to ▮▮▮▮▮ is ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, "Agreement" includes a Statement of Work ("SOW") dated March 9, 2018 as well the Software as a Service ("SaaS") Agreement, and section 12.12 of the SaaS Agreement directs that a "Statement of Work shall prevail to the extent of any inconsistency."

17. With regard to paragraph 6 of the complaint, Planview admits that the Agreement, including the SOW, describes the Consulting Services that Planview provided to support the project.

18. Planview admits the statement contained in paragraph 7 of the complaint.

19. Planview admits the statements contained in paragraph 8 of the complaint.

20. Planview admits the statement contained in paragraph 9 of the complaint; however it did not merely attempt performance and delivery but rather actually performed and delivered the SaaS Services and Consulting Services.

21. Planview denies the allegations made in paragraph 10 of the complaint.

22. Planview admits the Bank gave written notice of its complaints, which it quotes, on May 9, 2018, but Planview denies the merits of those complaints.

23. Planview admits that the Agreement grants Planview sixty days to cure, but denies that the Bank gave Planview a meaningful opportunity to cure.

24. Planview denies the allegations made in paragraphs 13-14 of the complaint.

25. Planview cannot admit or deny what the Bank "deemed," but it denies the remainder of paragraph 15.

26. Planview admits the statements contained in paragraph 16 of the complaint.

27. Planview denies the allegations made in paragraph 17 of the complaint. Planview's May 17, 2018 letter is attached as Exhibit 1.

28. With regard to paragraph 18 of the complaint, Planview admits that its representatives had a conference call on May 31, 2018, but denies there were any deficiencies or that the SaaS Services failed to meet the Bank's requirements as set forth in the Agreement.

29. Planview denies the allegations made in paragraph 19 of the complaint.

30. With regard to paragraph 20 of the complaint, Planview admits that the Bank sent a termination letter on June 13, 2018 but denies that there were deficiencies or that the Bank had a basis for termination.

31. Planview admits the statement contained in paragraph 21 of complaint.

Planview denies the allegations contained in paragraph 22 other than the quoted language. Planview's June 25, 2018 letter is attached as Exhibit 2.

32. With regard to paragraph 23, Planview denies any deficiencies remain uncured and denies that 60 days passed between notice of termination and this suit. Planview further denies that 60 days passed between notice of termination and the Bank's purported termination.

33. Planview admits the statements contained in paragraph 24.

34. Planview cannot admit or deny paragraph 25 of the complaint.

35. Planview admits the statement contained in paragraph 26 of the complaint.

36. Planview denies the allegations made in paragraphs 27-31 of the complaint.

37. Paragraph 32 does not require a response.

**B.     Additional Defenses**

38. The Bank anticipatorily repudiated and wrongfully terminated the Agreement.

39. The Bank's prior material breach excused any further performance by Planview.

40. The Bank failed to perform or satisfy conditions precedent.

41. The Bank waived its claim.

42. The Bank is estopped from asserting its claim.

43. The Bank failed to comply with its duty to mitigate.

44. Planview's product meets and exceeds the "industry standards" required by the Agreement.

45. Contractual limitations on liability bar or limit the Bank's claim.

**C.     Attorneys' Fees**

46. Pursuant to section 12.7 of the SaaS Agreement and Texas Civil Practice and Remedies Code § 38.001, the Bank should pay Planview's attorneys' fees if Planview is the prevailing party.

### III.     PLANVIEW'S COUNTERCLAIM

47. Planview incorporates Section I Background as if fully set forth herein.

48. The Bank executed and agreed to be bound by the terms of the Agreement, including all "Bank responsibilities and deliverables" set out in Appendix A.

49. The Bank materially breached the Agreement by failing to comply with "Bank responsibilities and deliverables," by refusing to pay amounts it is responsible for under the Agreement and by failing to provide Planview a meaningful opportunity to cure.  These breaches caused damages to Planview.

50. Pursuant to section 10.4 of the SaaS Agreement, the Bank is now required to pay Planview the entire amount remaining under the contract ███████ immediately.

51. The Bank is also responsible for interest and Planview's attorneys' fees and costs.

52. Presentment has been made.

53. Planview demands a trial by jury.

## PRAYER

Planview respectfully requests that this Court deny the Bank's claim, grant Planview damages and acceleration as well as interest, attorneys' fees and costs. Planview further seeks any additional relief to which it may be justly entitled.

Respectfully submitted,

**BURGESS ASSOCIATES**
515 Congress Avenue, Suite 1900
Austin, Texas 78701-3526
Telephone: (512) 482-8808
Facsimile: (512) 900-6325
Email: kburgess@burgesslawpc.com

Dated: August 13, 2018

By: */s/ Karen C. Burgess*
       Karen C. Burgess
       Federal Bar No. 00796276T

**ATTORNEYS FOR DEFENDANT
PLANVIEW DELAWARE, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on the attorneys of record in accordance with the Federal Rules of Civil Procedure on this the 13th day of August, 2018, as follows:

Kelley F. Farrell
Federal Bar No. 43027MO
Aaron W. Sanders
Federal Bar No. 64133MO
Blitz, Bardgett & Deutsch, L.C.
120 South Central Avenue, Suite 1500
St. Louis, Missouri 63105-1796
Telephone: (314) 863-1500
Facsimile: (314) 863-1877
Email: kfarrell@bbdlc.com
Email: asanders@bbdlc.com

*/s/ Karen C. Burges*
Karen C. Burgess